Harrison v. Granite Bay Care, Inc. Good afternoon, Your Honors. May it please the Court. My name is Barbara Archer-Hirsch, and I'm here as Commission Counsel to the Maine Human Rights Commission, which filed an amicus brief in this case. We're here because it's our belief that the lower court erred when it applied Winslow v. Arista County's job duties test to mandated reporters. And the error was in not even considering an entire subsection of the Whistleblower Protection Act, Section 833.3, which is entitled Reports of Suspected Abuse, and which addresses exactly the situation in this case when there is an employee who is mandated to report suspected abuse or neglect or exploitation of either a child or an elder, a disabled elderly individual. These folks are required by law to make these reports, and there is a special section for them under the Act which wasn't even mentioned below. The Maine Human Rights Commission is a quasi-independent, non-partisan state agency, and it is charged with enforcing the Human Rights Act, and through it, the Whistleblower Protection Act. The Whistleblower Protection Act is a remedial statute. It is to be interpreted broadly, and its exceptions to be interpreted narrowly. Now looking at the Whistleblower Protection Act and the structure of it, the Commission's position is that it's clear that Winslow does not even apply, Winslow dealt with an 833.1 case, not an 833.3 case. Section 833.1 deals with voluntary reports, and it is entitled to protection from retaliation by their employer. That looks at whether or not the voluntary report was somehow oppositional. It has to have been somehow inconsistent with the employer's interest, which is why subsection 2 requires that when you're dealing with subsection 1 cases, the employee first, except in a very limited circumstance, needs to go to their employer and give their employer an opportunity to correct the situation. For subsection 3, the employee has no choice. The State has already made a decision that these folks are required to report. And it restates that obligation. In terms of your appearance here to vindicate the role and position of the Commission, if a ruling came from this Court that left Winslow intact, but found that subsection 3 was yet an exception to the interplay between 1 and 2, that would be okay with you? I think that that would decide this case, certainly. But are you asking for something more than that? I don't think it's necessary in this case. I think that read broadly, Winslow could swallow parts of section 833.1 because employers can enact broad policies that could essentially swallow the List of Law Protection Act. But I don't think you need to get there in this particular case. Thank you. May it please the Court, my name is Maria Fox and I represent Tori Harrison in her appeal of the District Court Summary Judgment Order in favor of her former employer, Granite Bay Care. I would like to reserve two minutes for rebuttal, if I may. Yes. Thank you. We are asking the Court to reverse and remand, or in the alternative, that the Court certify the question of the existence and scope of any job responsibilities exception to the Maine Whistleblowers Protection Act to the Maine Supreme Judicial Court sitting as the law court. The standard for certification is met here. There's nothing in the language of the Act that speaks to a job responsibilities exception. There is no clear controlling precedent issued by the law court on this issue, and it's determinative of this case. In addition, there are special circumstances we submit why the law court should opine in this case because of the significant public policy implications that are at play if Winslow is applied to reach mandated reporters. While we are requesting certification, we don't believe that this Ms. Harrison engaged in protected activity. As counsel for the Maine Human Rights Commission indicated, the plain language of Subsection 3 of the Act squarely encompasses DHHS reports as protected activity, and that's what occurred here. That was the protected activity. There were also some internal reports that Ms. Harrison made that arguably fall also under Subsection 1 of the Act, but the primary issue here is really whether a DHHS report that's mandated by an employee is protected activity, and we think that that law is very clear in Subsection 3. Does that mean that you get all the relief that you're seeking if you won under Subsection 3? Yes. Because... There's no part of the case before us that can't be resolved in your favor under Section 3? That's correct. That's the primary protected activity clause. So I'm asking you if it's the entirety. So Ms. Harrison, there is a different set of protected activities that she engaged in. Three times she reported internally untimely payment of wages to granted daycare worker clients. That's not a report to DHHS. And that's before us? That was part of what was dismissed at summary judgment? That was before the lower court, and the lower court decided that... And is that part of your appeal to us? Yes, it is. So if we ruled, decided the case just on Subsection 3, that would not give you all the relief you're seeking? It would return, it would allow reversal and remand to the jury, but we would not... I see. But no, here's just on that point. If we reverse and remand just on a Subsection 3 decision, it looks to me at least like what Winslow means, you're going to lose on summary judgment on the non-Subsection 3 material at district court. I don't see, unless, there's some reason to think otherwise. So I guess I'm just wondering, what do you really want us to do? What I would really like this court to do is to find that Subsection 3 covers DHHS reports. That's Part 1 of her protected activity. I also think that Winslow, without disturbing it, can be clarified, and let me explain why. The reason is that Winslow is wholly distinguishable on its facts, and also the holding, we think, was much more broadly stretched by the district court interpretation of Winslow to reach the facts of this case. In Winslow, the job responsibilities exception really relates to specifically assigned job duties to an employee, not general obligations required of all employees. In Winslow, the plaintiff employee was an executive director, and the communications that she pointed to as protected activity were communications that she was specifically directed to make by her supervisor, and then communications that she made to her board of directors that related to organizational compliance issues, a core job duty of an executive director. The cases upon which Winslow rely similarly have situations where employees have specifically assigned job duties. It's the nature of their job to report whatever wrongdoing they're now pointing to as the protected activity. Here Ms. Harrison was a training director for Granite Bay Care, and there's nothing unique about her position as a training director that made her more required to deal with mandated reporting than any other employee at Granite Bay Care. Her duties to report really stemmed from her obligations under her social worker license and mandated reporter laws relating to people who work in this industry, as well as Granite Bay Care's policies that track those laws that they're required to promulgate pursuant to DHHS reports. With respect to her internal reports, what she's raising are their wage and hour issues. These are employment law violations that she's raising. They are also suspected exploitation, but this is why they fall also under subsection one of the act as well as subsection three. So when you say also, does that mean everything she does could be characterized as falling under section three? Not everything she does could be characterized as falling under subsection three. What's the specific things that she is trying to get relief for that don't fall under section three, in your view? The internal report that she made regarding the untimely payment of the Granite Bay worker clients, because subsection three really deals with filing reports with DHHS, and until she filed that report, I don't think she would- If it's an internal report, it can't count as a subsection three report. Correct. But the record is undisputed. Granite Bay Care doesn't dispute that making payment of Granite Bay worker clients was outside of her job responsibilities. And so while I believe they're going to argue that she had requirements to report internally suspected exploitation, and this was also that, there's nothing in the mandated reported policy that Granite Bay Care promulgated, nothing in her job description that specifically says that she's uniquely in charge of that kind of reporting. So for those reasons, we just don't think this fits the job responsibilities exception that Winslow created. And so therefore, for both of those reasons, subsection three being so clear on the application to DHHS reports, and then the holding as we read it, and that we believe should be read, just does not reach the facts of this case. Now Granite Bay Care asks that this court affirm on the alternative element of causation, and the district court did not reach those grounds, but I'll just touch on them briefly. We think that there's ample evidence here to send this case to a jury and material disputes of fact. There is a temporal proximity of less than three months between the time that she made the DHHS report and her termination. There's evidence that she was admonished relating to the filing of the DHHS report by her supervisor, that the state director was upset in relation to this DHHS report, that there was a sea change in her work environment following the DHHS report, and then if you look at what exactly they're saying that they fired her for, there are a number of inconsistencies and disputed facts over what happened. Granite Bay Care says that she was fired for making certain comments prior to a staff meeting, and that essentially she was overheard and overseen calling for the removal of Granite Bay Care's state director. She squarely denies that, that's in the record. Other witnesses deny that she was doing that. They claim that she was a ringleader and leading the charge and all the co-workers were nodding along. There are witnesses that say that's not what happened. There was a conversation that was going back and forth. Other people were equally or more vocal than she was. Disputed facts that need to be sorted out by a jury. In addition, if you look at how she was terminated, when they brought her in to fire her, they refused to give her a reason for the termination and then issued her a letter that said that the reason was that she had created disharmony in the workplace and referred to reasons, plural, and events, plural, leading to the decision to terminate. The standard on causation for the Civil Law Protection Act claims is that there must be a substantial, that the protected activity must be a substantial factor, but not necessarily the only factor in the decision to terminate. So a reasonable jury clearly could find, you know, based on that evidence, that the termination letter itself indicates, you know, if it was really because she made inappropriate comments, the letter would have said so, and the letter also refers to other reasons and other events that were at play here. In addition to that, the termination of Ms. Harrison violated Granted Pay Care's own progressive discipline policies, which reserves termination for people who have had notice, which she didn't have, or extreme situations, and that this wasn't one of those cases. Nobody else involved in the conversation over which they said she was terminated was even disciplined, much less terminated. No one else had been fired for creating disharmony in the workplace or for insubordination unless they had been given some sort of prior notice or had some other types of performance issues. Thank you. May it please the Court, Tyler Smith on behalf of Granted Pay Care. Interpreting paragraph 3 of subsection 833 as an independent section of the Whistleblower Protection Act is likely to cause unintended consequences, is irreconcilable with authority from the law court, and is contrary to stated legislative intent regarding the mandated report or language. Now, although this case comes before the Court in the context of the job duties exception, the result of reading section 3 as a stand-alone provision is that every mandated report in the state of Maine will set the trigger for a whistleblower claim, even under circumstances where the mandated report was motivated by self-serving or even a malicious purpose. Now, let me give the Court an example of how that could play out. For example, in this case, let's say the case did go to a jury, and the jury concluded that Ms. Harrison's report to DHS was not intended to expose exploitation, but rather it was to serve as an opportunity, or excuse me, as an excuse to send an email to one of CARE's owners, drawing upper management of CARE into scrutiny. As the Court will note from that email, which is in the record, she basically indicates to one of CARE's owners that she's made this response, she characterizes it as a courtesy notification, and then she goes on to make a number of remarks about Mr. Robinson and how she believes he will be addressing the situation. So, in other words, if there is a malicious intent or improper or self-serving purpose behind the report itself, that will still be a protected activity, which is not what the Whistleblower Protection Act is intended to do. And that analogy can go one step further. Even if an employer is faced with a situation where they learn a mandated reporter is misusing their duties in that type of fashion, that employer is locked into employment with that employee. They wouldn't be able to discharge or discipline them, because if you read Section 833.3 as a stand-alone provision, good faith is read out of the claim. So even if the employer knows that this misuse is ongoing, there's essentially nothing that they will be able to do about it. Now, in the briefing, there was also the issue that was raised... Well, it doesn't mean you can't fire. It means you can't fire because of that. So if you can demonstrate that there was termination for another reason, it may result in a lawsuit, but it won't result in your inability to terminate the employee if, in fact, the termination was for a valid reason. And that's absolutely correct. However, if you have the situation where the employer knows that the employee is misusing their reporting duties somehow, the employer would not be able to take any action on that fact. And frankly, that would be a very good reason for an employer to either discharge or discipline an employee. That is, knowing that the employee is taking their mandated reporting duties and using them for self-serving purposes. Now, what work does Section 3 do if it does not overcome the good-faith exception in Section 1? Well, the answer to that question is in Committee Amendment A, which was the legislative amendment that actually added that language. And what it does is it serves, as the law court stated it did in the Costain case, as an exception to the generally applicable requirements that any whistleblower or plaintiff needs to first bring the condition to the attention of its employer and then afford the employer a reasonable opportunity to correct the situation. Now in the briefing, there was the argument raised that the job duties exception would essentially create a situation where an employer can immunize themselves from whistleblower claims. Now, setting aside the fact that that argument is more of an attack on Winslow than really on this particular case, that type of argument has been raised and rejected in other contexts where job duties exceptions have been recognized. For instance, in the Garcetti v. Siavos case, which was a United States Supreme Court case which recognized a job duties exception to First Amendment claims, the employee made that very same argument. And what the Supreme Court said was the test isn't just what's written in the policy. The test is what are the practical expectations of the employee? In other words, is the policy and custom of the employment such that these reports are actually made? Was the employee ever discouraged or told not to make these particular reports? Or is this just something that is in a job description that's unenforced? And that's an important distinction in this case because here there's no evidence that this was a policy that was not being enforced. Granite Bay Care has hundreds of mandated reports by employees every single year and there's no evidence in the record that any employee has been disciplined or discharged for making such reports. In fact, it provides individual or provides training to all employees on effecting mandated or implementing mandated reporting laws which Ms. Harrison herself did perform at certain times. Is there any evidence in the record that an employee made a report regarding management abuses? Any other employee complain about management specific abuses? Not that I'm aware of unless you look at some of Ms. Harrison's statements. When she had sent the email to Kasai Mumpini, who was one of the two owners, which she characterized as a courtesy email in the body indicating that she had in fact made the DHS report, she went on to characterize how she felt Mr. Robinson, who was Care's state director at the time, would deal with the situation. So that could be construed as that sort of a situation. And when you look at that email, that goes back to my analogy earlier about what would happen if Section 833 effectively trumps the good faith requirement. Now not only do we have to explain how you read the text, I understand the point you make that Section 3 does additional work because of the getting rid of the notice, but Section 3 does not have a good faith constraint in it textually where Section 1 does. So just how do you get textually the idea that Section 3 has a good faith requirement like Section 1 even though Section 3 does not? I'll preface this by saying that the act certainly itself is not a model of clarity, but when you look at the way that it's structured, Section 1 provides a variety of areas of substantive protective, some of them including the good faith exception, some of them do not, or a good faith requirement, excuse me. Subsection 2 is indicated in the legislative history, it serves as a limitation on that protection by requiring certain internal reporting requirements and also requiring reasonable notice. Now Section 3, as stated by the law court in the subsection 2's internal reporting requirement. That's just the first sentence of Section 3. That's correct, Your Honor. That's what the first sentence does. And what the second sentence does is it recognizes that mandated reporters may not necessarily, or excuse me, their duties under the reporting laws may not necessarily track what is required under the whistleblower statute. For example, the situation of where a mandated reporter may be required to take photographs of visible trauma or make a telephone call to the police or to the district attorney under certain circumstances. Those may not necessarily fall within the letter of subsection 1, and what that second sentence does is it ensures that those additional steps won't cause a situation where a whistleblower claim is necessarily defeated. But as Judge Barron says, it doesn't. That's the problem. I mean, it's a good articulation of the problem, which is subsection 3 is a seems to be contemplating activity, mandated reporting, that is not encompassed by subsection 1. But subsection 1 constrains the actuality of that requirement by a good-faith requirement, and subsection 3 does not with respect to that extra activity. So how textually, I understand the policy reason that you're making, but how textually can you read subsection 3 to then import the good-faith requirement that it does not have with respect to that activity that, as you put it, does not track section 1 activity? Well, textually, again, I do agree that it is a difficult statute as a whole, but the substantive basis of the claim is under section 1, and when you look at the way the law court has read subsection 3, it has called it an exception. Now the issue with the additional things that a mandated reporter may be required to do, it's simply the requirements of the mandated reporting laws. Again, the other actions, such as taking the photographs, calling the district attorney, things like that. Maybe I'll put it this way. Do you contend that in this case, everything Ms. Harris did is both section 3 and section 1 activity? Well, I'm not sure I understand the question, that everything... All the reports that she made, whether internal or external, the ones to, I forget, DDHS, whatever, is your contention that all of that activity she could have brought as a section 1 claim? Well, that's correct. That could be a section 1 claim in this particular instance, if you look at the way her claim is structured. I mean, I understand her argument here to be that you don't even need to consider subsection 1, at least with respect to the DHS report, because it was... What's your view on that? My view on that is... Do you have to consider section 1 or not? I think you do have to consider subsection 1, because that's the operative basis. And to the extent there's an ambiguity, looking at the legislative history, the legislative history is very clear that the committee amendment that actually added the mandated reporter language was not intended to enable a new class of whistleblower complainants. It was a limitation on who can bring a whistleblower claim. Namely, when the act was first proposed in the legislature, it was just essentially the subsection 1 language. And then there was testimony from an employer, Union Mutual, who agreed with the policy of the act, but indicated that the employer should be given a reasonable opportunity to correct the situation. And that led to committee amendment A, which included both the internal reporting requirement and the mandated reporter language. So as a result of that, the committee amendment, the legislative intent here, was not to expand the scope of actionable or the scope of potential plaintiffs for these types of cases. Instead, it was a limitation, and it was simply a recognition of the procedural problem that a mandated reporter would face when their reporting duties overlapped with their whistleblower activities. And additionally on that point, with respect to the way the three parts of the statute work together, textually, Ms. Harrison's view of the statute reads Section 3 as standalone, which has nothing to do with Paragraph 1 or Paragraph 2. When you look at the legislative history in the Statement of Facts, the Statement of Facts states expressly that even though a mandated reporter does not need to afford a reasonable opportunity to correct the situation, the mandated reporter still needs to notify her employer as soon as possible of the unsafe condition itself. So the legislative history shows that they do contemplate that there is this crossover and that the mandated reporter language itself is not a standalone provision. Now I do want to touch on the issue of causation, because ultimately Before you go there, I think I have one more question about the good faith issue. Wouldn't it be the case if we accept your reading of Winslow that an employer could simply make all state mandated reporting a job requirement and then read Section 3 protections out of the statute for purposes of that employer, that business? Well, if an employer was trying to do that, the purpose of that policy would be to basically to quash mandated reports. You could just have a rule saying it will be one of the job duties of every employee will be to comply with mandated reporting requirements, or comply with all state laws. Well, that would go back to what was recognized in the Garcetti v. Ciabos case, where it was discussed that the test isn't just what's written in an employment manual, and that's not what we're arguing here today. The test is what are the duties that are actually expected of the employee. And as applied to this case, the duties that are expected of the employee do involve actually making mandated reports. It's an important policy. Protecting its clients from things such as exploitation is the very thing that CARE is in the business of doing. This is different from, say, the federal court cases with the Federal Whistleblower Act that involved a situation where someone argues that there's a federal regulation that requires them to disclose waste or fraud. This is a specific requirement of every CARE employee. Now, I see my time is short. I do want to address Before you get to causation, can you just address the internal reports? In other words, the non-DVHS reports? Because as I understand the Ms. Harris argument is that those are ancillary, that was pursuant to an ancillary job function as opposed to a core job function. So two questions. Do you accept that distinction between ancillary and core? And then second, how would you classify those internal reports? Well, I don't recognize that particular distinction. Your position is that there's no, job duty is a job duty whether it's a significant one or a trivial one? Let me rephrase. I don't agree that there's a per se job duty exception. What there is, however, it's the test of whether or not those are actually duties that are expected of the employee under the circumstances. And I believe there's one other component of your question if you'd like me to respond. How would you classify the internal reports along the spectrum that you're using? And in this case, the internal reports are critical. They're called for not only under the policy, but as explained in the record testimony attached to our statement of facts 14 and 15 in the record. The reason why that's important is the state of Maine has a very limited number of, limited amount of resources to investigate exploitation. The only way that CARE knows these issues get addressed is if they're reported internally. Thank you. I'd like to address the good faith issue. The legislature saw fit to create a special section for anti-retaliation protection for mandated reporters. As counsel for the Maine Human Rights Commission indicated, this is very different than the proverbial whistleblower. This is protection for someone who actually has the job responsibility to make the report. In so doing, they reference the mandated reporting statutes themselves, which deal with the issue of good faith. The Adult Protective Services Act, which is referenced there, deals with it in relationship to immunity from liability, that good faith is presumed. And if you report in good faith, then you're going to be immune from civil liability. And I take it that's, in your view, covered under subsection 3, when it says as long as the report is made in conformity with the laws. Exactly, exactly, your honor. And the Child Protective Act that's also referenced in subsection 3 addresses it a little bit differently. There's actually a section of that mandated reporter law that specifically says that the employee is required, that an employer may not discriminate against an employee for good faith reporting and following of that statute. My point being that when the legislature enacted the Maine Whistleblowers Protection Act and enacted subsection 3, it knew that good faith was already dealt with in those mandated reporter statutes and the person gets coverage under the act only if they follow the requirements of those statutes. So it was dealt with. We submit that this statute is unambiguous and we don't need to go to the legislative history to try to figure out what it means because it is so clear. But if you do go to the legislative history, you'll see that there are letters and information that really do support the substantive aspect of subsection 3 and the need for that. Thank you.